UNITED STATES, Appellee

v.

WILLIAM HOWARD McNEILL, Private E-2,
U. S. Army, Appellant

2 USCMA 383, 9 CMR 13

384

No. 1048

Decided April 14, 1953

Lᴛ Cᴏʟ George E. Mickel, U. S. Army, 1ꜱᴛ Lᴛ William S. Maxwell, U. S. Army, and 1ꜱᴛ Lᴛ Patrick H. Thiessen, U. S. Army, for Appellant.

Lᴛ Cᴏʟ Thayer Chapman, U. S. Army, and 1ꜱᴛ Lᴛ Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

Gᴇᴏʀɢᴇ W. Lᴀᴛɪᴍᴇʀ, Judge:

Accused was inducted into the Army on October 24, 1950. Some six weeks later on December 1, 1950, while en route from Fort Dix, New Jersey, to Camp Stoneman, California, he went absent without leave. He was apprehended by military police in Newark, New Jersey, on September 28, 1951. He was charged with desertion in violation of Article of War 58, 10 USC § 1530, found guilty and sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for one year. The convening authority approved the findings and the board of review affirmed. The case is before this Court on petition of the accused. He urges three assignments of error, namely, (1) the law officer erred in overruling the motion to dismiss the charge for lack of jurisdiction over accused, (2) the evidence is insufficient to support the finding of guilty, and (3) the law officer's instructions were erroneous.

I

Jurisdiction in this case is asserted under Article of War 2, 10 USC § 1473, which provides as follows:

"(a) All officers, warrant officers, and soldiers belonging to the regular Army of the United States; all volunteers, from the dates of their muster or acceptance into the military service of the United States; and all other persons lawfully called, drafted, or ordered into, or to duty or for training in, the said service, from the dates they are required by the terms

of the call, draft, or order to obey same. . . . ."

It is the principal contention of the accused that he is not subject to this Article of War because of an exemption contained in the Selective Service Act of 1948, 50 USC App 456. This Act provides:

"No person who served honorably on active duty between September 16, 1940, and the date of enactment of this title for a period of twelve months or more, or between December 7, 1941, and September 2, 1945, for a period in excess of ninety days, in the Army, the Air Force, the Navy, the Marine Corps, the Coast Guard, the Public Health Service, or the armed forces of any country allied with the United States in World War II prior to September 2, 1945, shall be liable for induction for training and service under this title, except after a declaration of war or national emergency made by the Congress subsequent to the date of enactment of this title."

It is crystal clear that this Act would have exempted accused from being lawfully inducted had he disclosed his previous service. The record shows that he had served two years in the Army between November 1944, and November 1946, and three years in the enlisted reserve corps between October 1946 and October 1949. In both cases he was honorably discharged. However, when he filled out the necessary registration forms required by the Selective Service Act of 1948, he failed to notify the appropriate selective service classification board of his prior military service. The desired procedure is to write the word "none" in the proper blank space provided for that purpose if the applicant has had no prior service, or, if military service has been performed, to write in the supporting data. In this case the accused neglected to establish his right to be classified properly as the blank spaces provided for furnishing the specific information contained no entries.

There is no dispute concerning the regularity of induction if it is determined that accused waived his exemption. By this we mean no claim is made that subsequent administrative requirements were not complied with. So the question can be narrowed to whether the registrant must furnish information showing his exemption or suffer the consequences. The authorities appear unanimous in placing the burden on him. In the case of Harris v. Ross, 146 F2d 355, Judge Waller, speaking for the Circuit Court of Appeals, Fifth Circuit, stated:

". . . . In short, it is the burden of every male citizen within such age group who would escape the performance of military duty to definitely satisfy the local board as to the existence of grounds for his exemption or the existence of appropriate and recognized reasons for his deferment. The local board does not have the affirmative."

In United States v. Graham, 57 F Supp 938 (DC Ark), we find the following statement of law:

"The relator is a native born citizen, twenty-one years of age, and the presumption is that he is subject to military service as any other citizen of like age, and subject to induction upon proper order of the local board. Therefore, the burden is upon him to bring himself within the exemption he claims. . . . ."

And in United States v. Mitchell, 248 F 997 (DC NY), a similar rule is announced. In that case the court stated:

"It is evident that, if a person has registered who was outside of the ages specified, or who failed to claim that he was exempt, or that he was not subject to draft, he would nevertheless, if drawn, be inducted into the army, and would be subject to the discipline thereof in all respects, even though thereafter he might change his mind and wish that he had claimed exemption, exclusion, or freedom from all liability to the exercise of jurisdiction under the law."

These authorities lead to the inescapable conclusion that when an accused fails to furnish a basis for an exemption he is subject to military law. Fur-

thermore, when he is classified and does not appeal from his classification, but on the contrary reports for duty, he cannot reverse the local board by concluding not to serve. To hold otherwise would seriously interfere with the operation of the selective service system. Draft boards are confronted with classifying every applicant, and, if the boards were required to search all military records to discover grounds for exemptions, the draft machinery would be brought to a standstill. This particular instance points out how impossible such a rule would be. Here accused failed to furnish the requested information, he failed to show any reason for an exemption, he reported for duty, he was housed, fed, clothed and possibly paid for six weeks and then, when selected for possible overseas duty, he went absent. To allow an exemption to be exercised in that manner and at that late date would allow an inductee to enter upon his duties as a soldier and then abandon the service according to his own whims without fear of punishment.

## II

Appellate defense counsel urges earnestly that proof of jurisdiction was by the use of incompetent evidence. The facts which raise this question are these: At the trial, over objection of the accused, there was oral testimony by an officer from State Selective Service Headquarters concerning the contents of the documents which were filed by accused with the draft board. The trial of the case was held at Fort Jay, New York, while the records were on file at State Selective Service Headquarters in New Jersey. Apparently relying on authority of selective service regulations, the State Director of New Jersey refused to produce the records but gave one of his officers authority to testify to the contents of certain sections. When it appeared the authorization might be too restricted, the law officer directed that trial counsel issue a subpoena duces tecum for the production of the records. The trial counsel called the State Director on the tele-

phone and was notified by him that legal counsel for selective service had advised him not to comply with a subpoena, if issued, but to expand the authorization of the officer to include other information. This information was relayed to the law officer who thereupon permitted secondary evidence to be introduced. We cannot help but question this manner of proceeding but do not believe it prejudiced the rights of accused for the reasons which will hereinafter appear. There is a certain amount of confusion in the record as to whether the State Director refused to furnish copies of the documents because they were not specifically requested by the registrant, as the Government witness testified that if the accused demanded the information, it would be produced. This matter was not pursued thoroughly but both sides were interested in the question of jurisdiction and in order to bring that issue into the open and to develop his theory of the case, defending counsel on cross-examination and then by recalling the witness, produced substantially the same testimony that was introduced by the State. As a matter of fact, the most important testimony was fully developed by defense counsel. Therefore, assuming that the secondary evidence should not have been admitted until a better showing had been made on the unavailability of the original records, any prejudice in this connection was cured by the defendant reproducing similar testimony by the same witness.

## III

Appellant next complains that the admission of a mimeographed statement signed by him in which he recorded his rank and serial number was erroneous and prejudicial. A relating of the following facts and circumstances is necessary to make this issue understandable. The accused was apprehended rather early in the morning and was taken to an Army headquarters where an attempt was made to obtain a statement from him. Before being asked any questions he was informed as required by Article 31 of the Uni-

form Code of Military Justice, 50 USC § 602. After being fully advised as to his rights, accused refused to make any statement. He was, however, handed two mimeographed forms which contained the typewritten statement that he had been given the necessary warning against self-incrimination. One of the forms provided space for recording a statement, the other one merely indicated that the particular article had been read to the party executing the document. At the time these were given to the accused he was informed that he need not sign either but in spite of this he signed the one which stated that Article 31 had been read to him. In executing the statement he signed his full name and followed this by recording his grade and serial number. At the trial of the case this document was introduced to assist in proving identity. We see no incompetency in this evidence and believe it to be material. That identity is sufficiently established by the record becomes readily apparent when this evidence is considered in connection with the identification of the accused as William Howard McNeill by another member of the armed forces, together with another admission by the accused when arrested that he was William Howard McNeill.

## IV

The next assignment of error questions the sufficiency of the evidence to support the finding of ■ guilty. In support of this contention, appellant argues the verdict cannot stand when there was no showing that the accused was absent from his place of destination, but only from his last place of assignment. We have some difficulty appraising properly this assertion. The accused was charged with going absent without leave while en route from Fort Dix, New Jersey, to Camp Stoneman, California. A copy of the order of transfer was introduced into evidence without objection and the morning report entry makes a prima facie showing of absence without authority from his organization at Camp Stoneman on the date he was due to report. In addition, at the trial it was never asserted that the accused was not guilty of, at least, absence without leave. Defense counsel conceded his client was guilty of that offense and sought to convince the court that it should so find. The only further element to be proved was that of intent to remain away permanently. That this could be reasonably inferred from the evidence is abundantly clear. The accused was absent for nigh onto ten months; his return was involuntary; he departed while en route to a west coast staging area; he was apprehended by military police; and, when arrested, at first denied his identity. We cannot say that it was unreasonable for a court-martial to conclude from those facts that he had no intention of returning.

## V

In questioning the sufficiency of the instructions of the law officer, appellant contends that the question ■ of the jurisdiction of the court should have been submitted to the court for determination. In United States v. Ornelas (No. 446), 6 CMR 96, decided December 31, 1952, we held that if there was a factual dispute concerning jurisdiction which would have an effect on the ultimate guilt or innocence of the accused, it should be presented to the court-martial for determination. In the instant case there was no such question. The issue here raised was predicated on testimony which was undisputed and, therefore, involved only a question of law. When that is the posture of the case, the decision rests solely with the law officer.

## VI

Appellant contends lastly that it was error for the law officer in his instructions to state that intent to ■ desert might be inferred from the fact that accused was in the vicinity of Army posts and did not surrender himself. We see no merit in this argument. The statement is not quoted in context as it was part of an instruction listing a number of factors from which an intent to desert

might be inferred. When considered in its entirety, the instruction is legally correct and finds evidentiary support in the record.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.