[black bar]

UNITED STATES, Appellee

v.

NOEL A. DOLLIOLE, Private E–2, and RAYMOND E. JOHNSON, Private First Class, U. S., Army, Appellants

3 USCMA 101, 11 CMR 101

Lt Col George M. Thorpe, U. S. Army, and 1st Lt Michael E. McGarvey, U. S. Army, for Appellants.

Lt Col William R. Ward, U. S. Army, Lt Col Thayer Chapman, U. S. Army, and 1st Lt Benjamin C. Flannagan, U. S. Army, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

Privates James F. Helm, Noel A. Dolliole, and Raymond E. Johnson, were tried jointly by general court-martial upon charges alleging robbery, in violation of Article 122, Uniform Code of Military Justice, 50 USC § 716, and assault in which grievous bodily harm was intentionally inflicted, in violation of Article 128, 50 USC § 722. Each was convicted of robbery, and, by exceptions and substitutions, of assault with a dangerous weapon. Privates Helm and Johnson were sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for five years, while Private Dolliole was sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for two years. These sentences have been affirmed by intermediate appellate agencies.

At the trial the following factual basis for the findings was established: On the night of the incidents giving rise to the charges, Umekichi Yoshida, proprietor of a retail liquor store in Mizumezawa, was at his place of business. Present as well were his son, Katsuji, and his daughter, Suzuki, together with several Japanese nationals and American soldiers. Suddenly one of the soldiers pushed Suzuki aside, thrust a knife held in his gloved hand at the owner of the establishment, causing him to step back, and with his other hand withdrew a number of yen from the cash drawer. As the girl screamed, several Japanese advanced on the soldier, who immediately fled, dropping three hundred yen on the floor. Katsuji Yoshida gave chase, and, overtaking him in the street, grappled with him until he was slashed on the arm by the knife wielded by the soldier. The soldier then made good his escape.

Apprehended and questioned a few days after these offenses, each of the accused made a complete confession. These confessions were received in evidence, and the court was properly instructed that each could be considered as evidence only against the person making it.

In the confessions each related that a Private Harper had conceived the plan to rob the liquor store. As the quartet prepared to execute their plan, Johnson gave Helm a knife and a pair of gloves. So armed, Helm, together with Harper and Dolliole entered the store, while Johnson took up his position at the door to prevent anyone from entering or leaving while the robbery was in progress. In accordance with their plan, Harper purchased a quantity of wine and then sought to distract the clerk's attention by fumbling for his money. As he did so, Helm set upon the owner and rifled the cash drawer. The glove worn by Helm was discovered where he said he had concealed it. Helm further pointed out a cut on one finger of the glove and bloodstains

thereon, and asserted that these resulted when he cut himself while grappling with Katsuji Yoshida. Although Johnson's statement indicated he was to prevent pursuit of Helm, there was no evidence, except the confessions of each accused, that he or anyone else participated in the acts of Helm or facilitated his escape in any way.

Each accused, testifying in his own behalf, admitted being in the vicinity of the liquor store prior to the robbery, but, repudiated their confessions, as the compositions of the Criminal Investigation Division Agents involuntarily subscribed to by them. Each denied all knowledge of or complicity in the crimes charged.

The foregoing evidence, apart from the confessions of the accused, established the commission of the crimes of robbery and aggravated assault beyond peradventure. Similarly established was the identity of Helm, as the principal actor; and his guilt was confirmed by his extrajudicial confession. As to the sufficiency of the evidence of his guilt no question is presented by the record, and we have denied his petition for review.

In behalf of Privates Johnson and Dolliole, however, it is contended that there is insufficient evidence to corroborate their confessions, and that the findings relating to them should be reversed. This argument is predicated upon the contention that each was charged with committing the crimes alleged "in pursuance of a common intent," and the prosecution relied upon the theory that each aided and abetted the principal actor. In view of this allegation and proof, the argument continues, it was incumbent upon the prosecution to establish by independent evidence the criminal agreement of the parties as an essential element of proof. Since such evidence was not produced, the confessions were improperly received. We granted their petitions for review to determine the sufficiency of the evidence to sustain the conviction.

Paragraph 140a, Manual for Courts-Martial, United States, 1951, provides:

"An accused cannot legally be convicted upon his uncorroborated confession or admission. A court may not consider the confession or admission of an accused as evidence against him unless there is in the record other evidence, either direct or circumstantial, that the offense charged had probably been committed by someone. . . . The corroborating evidence need not be sufficient of itself to convince beyond a reasonable doubt that the offense charged has been committed, and it need not tend to connect the accused with the offense. For example, if unlawful homicide is charged, evidence of the death of the person alleged to have been killed, coupled with evidence of circumstances indicating the probability that he was unlawfully killed, will satisfy the rule and authorize consideration of the confession or admission if it is otherwise admissible. In the case of alleged larceny or in a case of alleged unlawful sale, evidence that the property in question was missing under circumstances indicating in the first case that it was probably stolen, and in the second case that it was probably unlawfully sold, would be compliance with the rule. . . ."

This requirement of the Manual follows the prevailing American law on the subject, and its position in the structure of military law is certain. United States v. Uchihara (No. 60), 1 USCMA 123, 2 CMR 29, decided February 4, 1952; United States v. Forest L. Evans (No. 143), 1 USCMA 207, 2 CMR 113, decided March 10, 1952. As indicated by several decisions of this Court, the sufficiency of the evidence aliunde the confession is measured by the facts of each case. By its terms, corroborative evidence *need not tend to connect the accused with the offense*. It should be made clear that this rule does not require that the confession itself needs corroboration. The record must show simply that the offense charged has probably been committed by someone. United States v. Isenberg (No. 579), 2 USCMA 349, 8 CMR 149, decided March 25, 1953.

The Court of Appeals of New York, discussing a provision of the Code, sub-

stantially similar to the Manual's provision, declared in People v. Roach, 215 NY 592, 600, 109 NE 618, 621:

"It will be observed that the statute does not require that the confession itself shall be corroborated. It provides merely that alone it shall be insufficient to warrant conviction. The only additional proof which the statute makes necessary to justify a jury in convicting a defendant who has confessed his guilt is that there shall be proof 'that the crime charged has been committed.' There must be evidence in addition to the confession to prove the corpus delicti, but when, as in this case, the corpus delicti is proved by independent evidence, and the defendant has voluntarily confessed his guilt, a case for the jury is made out, and a conviction based upon such testimony is warranted in law. . . ."

In United States v. Forest L. Evans, supra, by slightly different wording, we established the same standard for testing the sufficiency of corroborative evidence, by stating:

". . . A general statement of the standard to be applied to a given crime is difficult to formulate and legally unnecessary We shall be satisfied if, for any crime, there is substantial evidence which makes it probable that the accused did not confess to an offense which never occurred."

The defense contention requires us to determine whether the allegation contained in each specification that the offenses were committed "jointly and in pursuance of a common intent," and the reliance of the prosecution upon the theory of "aiders and abettors," materially alters the corpus delicti of the offenses of robbery and aggravated assault.

The method of pleading adopted in this case is provided for by paragraph 26d, and Appendix 6a, 8, of the Manual, supra. It is evident from these provisions that the adoption of this method does not modify the elements of the offense charged. Its sole purpose and result is to permit a joint trial, thus saving time, labor, and expense. The common intent must be shown, not to establish the guilt of the accused, but solely to justify the procedure of a joint trial. The elements of the crime remain unchanged, and all the safeguards attaching to an accused in a separate trial are present.

"In joint trials . . . each of the accused must in general be accorded every right and privilege which he would have if tried separately. For example, each accused may, if he desires, be defended by individual counsel, make individual challenges for cause (62h), make individual peremptory challenges (62e), cross-examine witnesses, testify in his own behalf, introduce evidence in his own behalf, and, if an enlisted person, make an individual request that the membership of the court include enlisted persons (4a, 61g). In a joint . . . trial, both court and counsel must be careful to notice evidence which is admissible against only one or some of the joint or several accused and consider it only against such accused. . . ." [Paragraph 53c, Manual for Courts-Martial, United States, 1951].

Nor does reliance by the prosecution upon the theory that the accused were aiders and abettors, and thereby, principals, modify the essential elements of any offense charged. Article 77 of the Code, supra, 50 USC § 671, provides:

"Any person punishable under this code who—

(1) commits an offense punishable by this code, or aids, abets, counsels, commands, or procures its commission; or

(2) causes an act to be done which if directly performed by him would be punishable by this code;

is a principal."

This Article does not establish a separate offense, nor is provision made in the Table of Maximum Punishments for increasing the penalty provided for any crime upon a showing of any of these factors. The provision is intended solely to eliminate any distinction between principal offenders and accessories be-

104

fore the fact. The crime charged remains unchanged.

Because of the existence of a common intent in joint offenses, and the preconcert of action found in aiding and abetting, the situation presented in such instances is similar to conspiracy, which requires an unlawful combination of two or more individuals who have agreed to accomplish an unlawful purpose, or any purpose by unlawful means. Paragraph 160, Manual for Courts-Martial, supra. The corpus delicti of conspiracy is the unlawful combination, and this must be shown by evidence independent of a confession. Tingle v. United States, 38 F2d 573, 575 (CA8th Cir). Indeed, when both the conspiracy to commit a crime and the commission of the crime itself are shown, each may be separately charged, and the accused punished for each. Pinkerton v. United States, 328 US 640, 90 L ed 1489, 66 S Ct 1180. Obviously, this would be impossible if the agreement were a part of the crime planned.

The crimes of robbery and aggravated assault were established by substantial evidence apart from the confessions of the accused. It is clear therefore that neither Johnson nor Dolliole confessed to offenses which never occurred. This complies with the test laid down by us.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.