UNITED STATES, Appellee

v.

HENRY MANUEL, JR., Private, U. S. Army, Appellant

3 USCMA 739, 14 CMR 157

No. 2638

Decided February 12, 1954

LT COL Edgar R. Minnich, U. S. Army, CAPT William C. Irby, Jr., U. S. Army, and 1ST LT Alexander J. Jemal, Jr., U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial in Japan convicted the accused of forgery in violation of Article 123, Uniform Code of Military Justice, 50 USC § 717. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for one year. Intermediate appellate tribunals have affirmed the findings and sentence. The case is before this Court, on petition of the accused, to determine whether the evidence, apart from his confession, is sufficient to establish the corpus delicti of the offense.

The nature of the single assignment of error requires that we set out the evidence in detail. The accused presented a $100.00 money order to Private Fred C. Allen, an Army postal clerk, for payment. Written on the reverse side was an endorsement to the accused apparently made by Jack E. Baughman, the payee named in the order. Allen recognized this as a money order which had been reported stolen two days earlier at the Rest and Recuperation Center, Camp Nara, Japan. He informed an assistant of the fact and the military police were called. In the meantime, he advised the accused that the instrument had been reported stolen. Denying this report, the accused asserted Baughman had endorsed it to him. Upon the arrival of the military police, the accused was taken into custody and questioned concerning his possession of the money order. He acknowledged that he had found it at the Rest and Recuperation Center. However, rather than attempt to locate the payee, or deliver it to the military authorities, he signed the payee's name to an endorsement to himself, and attempted to cash it. This confession was reduced to writing and signed by the accused. After a preliminary showing of its voluntariness, and of compliance with Article 31(b) of the Code, supra, 50 USC § 602, the confession was received in evidence over the accused's

objection. This objection was rightly overruled because it was based on lack of opportunity by the accused to consult with counsel prior to his interrogation. See Anderson v. United States, 124 F2d 58 (CA 6th Cir).

At this point in the trial, it appeared that Baughman, the payee, had returned to the United States for separation, so his testimony was not presented to the court-martial. A *nolle prosequi* was then entered on a further charge of larceny. The accused did not testify, nor was any evidence presented in his behalf.

It is well settled that a conviction cannot rest exclusively upon the extra-judicial confession of an ▮▮▮▮▮ accused. The record must contain other substantial evidence indicating that the offense charged was probably committed, that is, that the accused did not confess to a crime that was never committed. United States v. Brooks, 1 USCMA 88, 1 CMR 88; United States v. Mounts, 1 USCMA 114, 2 CMR 20; United States v. Uchihara, 1 USCMA 123, 2 CMR 29; United States v. Evans, 1 USCMA 207, 2 CMR 113; United States v. Isenberg, 2 USCMA 349, 8 CMR 149.

In the instant case, the rule requires the production of substantial evidence that someone, intending to ▮▮▮▮▮ deceive, falsely affixed Baughman's signature to the postal money order, which signature would, if genuine, change the payee's legal right to the proceeds thereof. Article 123, supra; Manual for Courts-Martial, United States, 1951, paragraph 202; People v. Dwyer, 342 Ill 105, 173 NE 765. Concerning the apparent legal efficacy of the signature there can be no doubt, and no contrary contention is presented by the record or urged by the accused. This is true of the element of intent to deceive as well, for it may be said without hesitation that one who falsely signs another's name to an instrument and presents it for payment, representing that it has been properly endorsed to him, probably, at the very least, intends to deceive. Our problem is narrowed, therefore, to a determination of whether there is some substantial evidence, apart from the confession itself, that someone falsely signed the payee's name to the money order in question.

Manifestly, the testimony of Allen, the money order clerk, does not supply the necessary corrobora-▮▮▮▮▮ tion. It shows only that the accused presented a money order for payment, representing that it had been endorsed to him. Nothing about this suggests the commission of a crime. The clerk's assertion that a money order had been reported stolen, coupled with his opinion that the money order presented by the accused answered its description, does not suggest a forgery. Indeed, it cannot be considered at all, for on its face it was not based on his personal knowledge of the facts reported. It is simply a statement that someone, completely unidentified, reported in an undisclosed manner, the theft of an undescribed money order. This assertion is hearsay. As such, it is incompetent as evidence and cannot be considered in determining the issue involved. Manual for Courts-Martial, United States, 1951, paragraph 139*a*; United States v. Mounts, supra.

The testimony describing the circumstances under which the confession was obtained is not germane to the problem. Therefore, we will not discuss it.

The only remaining evidence is the money order and the confession signed by the accused. The con-▮▮▮▮▮ fession was properly received in evidence, for the preliminaries of voluntariness and full compliance with Article 31(*b*) of the Code, supra, were satisfactorily established. Although the corpus delicti had not been established when the confession was offered, receipt of the confession was nevertheless within the discretion of the law officer. He would be required to withdraw the confession from the court's consideration, if, at the close of the case, the necessary corroboration has not been received. In this particular, paragraph 140*a* of the Manual, supra, provides:

742

". . . Usually the corroborative evidence is introduced before evidence of the confession or admission; but the court may in its discretion admit the confession or admission in evidence upon the condition that it will be stricken and disregarded in the event that the above requirement as to corroboration is not eventually met."

Appellate Government counsel have advanced the argument that a cursory comparison of the signature affixed to the confession and that appearing in the endorsement on the money order indicates that both were written by the same individual. The basis for this comparison was before the law officer when the confession was offered. When determining the question of the required corroborative evidence, he was authorized to make the comparison by paragraph 143b of the Manual, supra, which provides:

"Whenever the genuineness of the handwriting of any person may be involved, as when it is desired to introduce into evidence against the accused a pay voucher or check purportedly signed by him or an admissible photostatic copy thereof, any admitted or proved . . . handwriting of such person shall be competent evidence as a basis for comparison by witnesses or by the court to prove or disprove the genuineness of the handwriting in question."

When this comparison is made, it is argued, the conclusion that the accused, not Baughman, signed the money order is inescapable. Thus, in the absence of any indication of his authority to do so, the probability that it was a forgery is clearly apparent.

We are impressed by this argument. Although both the self-incriminatory statements of the accused and his signature appear in the same document, they are by no means inseparable. Viewed from the standpoint of purpose, their distinctness, and thus, separability, is clear. The sole purpose of the former is to establish the guilt of the accused. The latter is affixed primarily to authenticate the confession. Many other cogent indications of separability exist. If otherwise admissible, a written confession may be received in evidence although it is unsigned. Gordon v. State, 252 Ala 492, 41 So2d 610; Bosko v. People, 68 Colo 256, 188 Pac 743; People v. Reed, 333 Ill 397, 164 NE 847. It has also been held that a confession freely and voluntarily given is admissible even though the accused's signature thereto was procured by coercion. Gray v. Commonwealth, 293 Ky 833, 170 SW2d 870. Conversely, this Court has held that a signature attesting the reading of Article 31, supra, is admissible to identify the accused, although no confession was obtained, United States v. McNeill, 2 USCMA 383, 9 CMR 13. Finally, under paragraph 140a of the Manual, supra, neither the written confession, nor the accused's signature thereto are indispensable to the proof of an acknowledgment of guilt. This may be proved by the testimony of anyone who heard him make it, without accounting for the written confession.

In the instant case, the signature to the confession was beyond question that of the accused. It was affixed voluntarily after a warning of the rights secured by Article 31, supra. It was, therefore, admissible as a proved specimen of the accused's handwriting. United States v. McNeill, supra; United States v. Rosato, 3 USCMA 143, 11 CMR 143; Dean v. United States, 246 Fed 568 (CA 5th Cir); Hartzell v. United States, 72 F2d 569 (CA 8th Cir); Reining v. United States, 167 F 2d 362 (CA 5th Cir). Here the confession was received without limitation. It could, therefore, be considered for any proper purpose, including that proposed by Government counsel. Consequently, there was in the record substantial evidence, apart from the confession, that the accused signed the money order in question. This satisfies the requirement of corroboration.

**743**

The decision of the board of review is affirmed.

BROSMAN, Judge (concurring):

I concur, although I suspect that persons of a certain cast of mind are likely to feel that the requirement of corroboration—the doctrine of *corpus delicti*—is being sapped by us in this case. I do not at all believe this to be true. We have earlier had occasion to advert to the truism that a trial by court-martial is not a fox hunt, and rather different ground rules obtain. At the same time, of course, it is mandatory that the substantial rights of one accused of crime be protected fully. Are we sacrificing any one of these through our decision in the instant case? I think not.

## II

The Manual tells us that a court-martial may not consider a confession as evidence against an accused "unless there is *in the record* other evidence, either direct or *circumstantial,* that the offense charged had *probably* been committed by someone." (Emphasis supplied.) It is also provided that "the corroborating evidence need not be sufficient . . . to convince beyond a reasonable doubt . . . and it need not tend to connect the accused with the offense." Paragraph 140*a*. It seems to me that the net of all this—as well as the rational core of the notion of *corpus delicti* as developed in common law cases—is that a court-martial shall not be permitted to convict on the basis of a confession, unless it is likely that the crime admitted actually took place. I credit profoundly the assertion that "confessions are the highest order of proof"—and so almost universally do juries and courts-martial. As a consequence, when such a body has before it an admission of guilt, of whose voluntariness it is satisfied, a conviction may be expected to follow—and ordinarily it should do so. The idea of *corpus delicti* enters the picture simply as a cautionary hedge, a gesture of protection against those extremely rare instances in which persons confess guilt of non-existent crimes. Judges of all levels—and this category is intended to

include both law officers and members of boards of review—should certainly see that this protection is fully accorded a confessing accused. Almost always they do.

Not infrequently, it seems to me, officers of the criminal law administration of the civilian community have overdone the job, and have granted the accused a "protection" which he neither needs nor deserves—one well beyond the logical heart of the principle. Just why they have done this, I am not sure. Indeed, this is the age of the common man—including the common accused—and the consciences of some of us concerning him have grown tender to an almost gangrenous degree. Human experience should teach us that one who confesses to a crime voluntarily is almost universally guilty of its commission. And even when he is not, he is—be it noted—quite without the protection of the doctrine of *corpus delicti*—provided the likelihood that the offense was committed by *someone* may be established.

Does our disposition of the instant case effect an inroad on the principle invoked by appellate defense counsel? The inroad, if any, consists simply in a willingness to find corroboration in evidentiary items which at the trial were not utilized explicitly for that purpose. My own impression—obtained from a reading of the record—is that this was not done because, in a not too well handled case, the point of *corpus delicti* was not clearly presented at the *nisi prius* level. However, in no genuine sense has the Government's "theory of the case" been changed in this Court—for it has offered nothing in the nature of a new basis for either evidential admissibility or criminal liability. Therefore, I can see no unfairness to the accused in accepting the conclusion and *ratio* proposed in the principal opinion.

Moreover, in our previous cases in this area, as I understand them, we have been concerned almost exclusively with the presence *in the record* — *vide* the language of paragraph 140*a*—of other evidence, usually circumstantial, of the probability of crime. We have

not been conscious, I believe, of any necessity for an overt recognition of the presence of this evidence on the part of the court-martial. United States v. Evans, 1 USCMA 207, 2 CMR 113; United States v. Petty, 3 USCMA 87, 11 CMR 87; United States v. Dolliole and Johnson, 3 USCMA 101, 11 CMR 101. Indeed, so far as verbalization and judicial conduct are concerned, it might appear that, under the law of this Court at least, the idea of *corpus delicti* is one which addresses itself solely to the judge and not the jury—to the law dispenser rather than to the fact finder.

### III

I do not agree that the present is one of those situations in which we are required to apply the principle that admissibility cannot be justified on a ground not urged explicitly at the court-martial hearing. There seems no doubt that the confession with which we are concerned was *generally* admissible — although its consideration against the accused was conditioned on the establishment of a *corpus delicti* at the trial—that is, the presence in the record of some evidence of likelihood that the forgery in suit had been committed. In this respect the case before us is to be distinguished sharply from Shepard v. United States, 290 US 96, 78 L ed 196, 54 S Ct 22, a prosecution for murder in which one item of evidence was the victim's assertion that the accused had poisoned her. This statement would have been competent to show that the latter did not commit suicide, as the defense claimed she had done, but was inadmissible as a dying declaration to show the accused's guilt —this for the reason that it had not been made under a consciousness of impending death. It was exclusively on the latter basis that the statement had been offered below—and in this connection the Supreme Court remarked that the course of trial had "put the defendant off his guard." The Court observed further that the only purpose for which the victim's declaration was admissible would be "unlikely to occur to the minds of uninstructed jurors, and even if it did, would be swallowed up and lost in" the use of the assertion in an improper manner. In the instant case, on the contrary, there was no danger whatever that the court-martial would use the confession for a purpose for which it was incompetent—and thus the risk of prejudice, with which the Supreme Court was concerned, was not present here.

### IV

It has been suggested that—conceding that Baughman's name had been placed on the money order by the accused, Manuel—there was no showing of a signing without authority, since fraud is never presumed. These comments are more than a little misleading, for they have to do with sufficiency of the evidence to support findings and not with *corpus delicti*. I suspect that fraud is not being *presumed* when an accused confesses thereto. As to corroboration, common experience may serve as a basis for the assertion that the presentment, without explanation or indication of agency, of a money order on which the payee's signature has been indorsed by a third person—to-wit, him who presents it—indicates that the signature has "probably" been forged. Certainly no conception of the requirement of corroboration of which I am aware demands the exclusion of literally every rational possibility of innocent purpose. United States v. Long, 2 USCMA 45, 6 CMR 45. We are assured by the Manual that "the corroborating evidence need not be sufficient of itself to convince beyond a reasonable doubt." Certainly nothing said by us in United States v. Isenberg, cited in the principal opinion, demands by way of corroboration "other evidence" tending expressly to show that not only did the accused place the payee's signature on the paper without indication of agency, but that in addition he was without authority to do so.

LATIMER, Judge (dissenting):
I dissent.

It appears to me the Chief Judge's opinion overlooks one important element in the offense; namely, that the indorsement was falsely affixed to the money order. The Manual for Courts-Martial, United States, 1951, states the

**745**

elements of the offense to be the following:

> "(a) That a certain signature or writing was falsely made or altered, as alleged; (b) that the signature or writing was of a nature which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice; (c) that it was the accused who so falsely made or altered such signature or writing; or uttered, offered, issued, or transferred it, knowing it to have been so made or altered; and (d) facts and circumstances showing the intent of the accused thereby to defraud."

To establish the element of falsely affixing the signature of the payee, the opinion states: "Thus in the absence of any indication of his authority to do so, the probability that it was a forgery was clearly apparent." Conceding the record shows that the accused indorsed the money order, the theory behind that statement must be that if a person signed another's name to a document, he is presumed to have forged the signature. If that concept is correct, then the burden is on an accused to prove that he did not commit the crime. Stated differently, a lack of authority to sign another's name can be presumed and the presumption used as evidence to establish an element of the offense.

The issue in this case is simplicity itself. In order to establish the *corpus delicti*, the Government must establish that the offense charged was probably committed. Paragraph 140a, Manual for Courts-Martial, United States, 1951; United States v. Isenberg, 2 USCMA 349, 8 CMR 149. In this instance, *aliunde* the confession, the Government established that the accused presented a money order with the payee's name indorsed on the back. The indorsement was in the handwriting of the accused. Nothing more was established. If that shows the offense of forgery was probably committed, then the *corpus delicti* is established. If it does not, then this conviction cannot be affirmed. In my judgment, it does not. I would therefore, reverse and grant a rehearing.