UNITED STATES, Appellant and Cross-Appellee

v.

GEORGE M. LANDRUM, Basic Airman, U. S. Air Force, Appellee and Cross-Appellant

4 USCMA 707, 16 CMR 281

708

No. 4478

Decided October 1, 1954

LT COL Harold Anderson, USAF, and MAJ Stephen E. Ware, USAF, for Appellant and Cross-Appellee.

COL A. W. Tolen, USAF, and MAJ Norman F. Carroll, USAF, for Appellee and Cross-Appellant.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial in Japan found the accused guilty of twenty specifications alleging a failure to obey a Far East Command Circular, in violation of Article 92, Uniform Code of Military Justice, 50 USC § 686. On appeal, a board of review reversed the conviction on the ground that a pretrial statement of the accused was improperly admitted in evidence. Under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 50 USC § 654, The Judge Advocate Gen-

**709**

eral of the Air Force filed a certificate in this Court which seeks review of the following question:

"Was the Board of Review correct in determining in this case that the evidence apart from accused's voluntary pre-trial confession was legally insufficient to establish the corpus delicti of the offenses charged?"

In addition, we granted the accused's petition for review to consider the sufficiency of the law officer's instructions.

Each specification of which the accused was convicted alleges the purchase of Air Force Exchange items, "for the purpose of resale to a person not authorized to purchase from the Air Force Exchange," in violation of Paragraph 10(h), General Headquarters, Far East Command Circular No. 54, dated October 26, 1950. Fourteen of the specifications allege the purchase of a single wrist watch; one sets out a purchase of two watches and a watch band; and the remaining five charge the purchase of a radio. All purchases were made during the period from December 1, 1952, to January 28, 1953.

Paragraph 10(h) of the Far East Command Circular reads:

"The purchase of exchange items for the purpose of resale, trade, or barter to or with any person who himself is not authorized to purchase from an exchange is prohibited."

Other subdivisions of the same paragraph enumerate the classes of persons and agencies who are authorized to buy exchange merchandise. Civilian employees residing in the country of their nationality are excluded, unless specifically authorized by the commander responsible for the operation of a central exchange.

At the trial it was established that a prescribed form of sales slip is used in the Air Force Exchange, Branch 198, Nagoya, Japan. The form is used to record the sale of every article sold for more than $5.00. It is completed in duplicate. The original is retained in the exchange and the duplicate is given to the customer. Among other things, it requires a statement of the name and organization of the purchaser and his signature.

Twenty sale slips, from the records of Exchange Branch 198, were admitted in evidence. Each related to a separate specification. Fifteen bore the name and organization of the accused; one had only his name; and four were purportedly signed by a "George Landrith." Also admitted in evidence, as Prosecution Exhibit 22, were exemplars of the accused's handwriting. A witness presented photographic enlargements of the sale slips and the exemplars. Although his qualifications as a handwriting expert were strongly attacked by the defense, the law officer ruled that he was properly qualified. Using the enlargements, the expert pointed out certain characteristics which, in his opinion, indicated that the signatures on the sale slips were made by the same person who made the sample writings on Prosecution Exhibit No. 22.

No direct evidence was presented to show specific dispositions of post exchange items by the accused. However, a Mr. Harukichi Masaki testified that he knew the accused, and that he had bought a "few" exchange items from him. Mr. Masaki maintained he had never purchased a wrist watch or radio from the accused. He did not remember whether he had ever seen any member of his family or other persons buy exchange items from the accused. Mr. Masaki stated that he was a Japanese National and he had never been authorized to buy exchange items.

At this stage of the case, the Government offered in evidence a written pretrial statement by the accused. In it he admitted that he engaged in "black market activities" since September 1952, and that he had sold to the Nagoya "clearing house," "practically everything that [he] could buy at the PX." It was established that the statement was made voluntarily, without improper inducement, and after full warning of his rights under Article 31 of the Uniform Code, supra, 50 USC § 602. Objection was interposed on the ground that there was not sufficient corroborating evidence of the commission of the offenses charged to justify admission

of the inculpatory pretrial statement. The law officer overruled the objection and admitted the statement.

Before the law officer's final instructions on the law, defense counsel submitted two requests to instruct. The first related to the elements of the offense and asked, in pertinent part, that the court be instructed:

"That at the time the accused purchased the item alleged in the Specification he intended to resell the item to a person or persons not included within the classes of persons authorized to make purchases in an Air Force Post Exchange.

"The classes of persons authorized to make purchases in Air Force Post Exchanges are: [enumerating the classes set out in the Circular]."

The accused's second request is as follows:

"An accused cannot legally be convicted upon his uncorroborated confession or admission. A court may not consider the confession or admission of the accused as evidence against him unless it be corroborated by some evidence, direct or circumstantial, that the offense charged has probably been committed, that is, at least some evidence bearing on each element of the crime alleged. If the offense alleged includes as an element specific intent, before a confession or admission of the accused can be used as evidence against him, it must be corroborated by some evidence indicating that the accused at the time of the alleged intent [sic] possessed the specific intent required."

Both requests were denied.

The court was instructed that the elements of the offense were:

"(1) That there was in effect a lawful general regulation as alleged; and

"(2) That at the time and place and in the manner alleged, the accused violated the general regulation."

In addition, the court was instructed on the presumption of innocence and the burden of proof, and was given separate instructions on the weight of circumstantial evidence and the testimony of an expert witness.

Military law proscribes a conviction founded solely upon an accused's uncorroborated confession or admission of guilt. Manual for Courts-Martial, United States, 1951, paragraph 140a, page 251. The record must contain substantial, independent evidence tending to establish the existence of each element of the offense charged. United States v. Isenberg, 2 USCMA 349, 8 CMR 149. This evidence may be either direct or circumstantial. United States v. Petty, 3 USCMA 87, 11 CMR 87.

Each specification here alleges a violation of the Far East Command Circular prohibiting the purchase of post exchange articles for the purpose of resale to an unauthorized person. No issue is raised as to the sufficiency of the evidence showing exchange purchases. However, the accused contends that the evidence is entirely inadequate to show that the purchases were made for the purpose of resale to unauthorized persons.

In testing the evidence for probability of guilt, within the meaning of the rule of independent corroboration of the commission of the offense, consideration must be given not only to the facts actually proven, but also to any reasonable inference that may be drawn from the facts. United States v. Evans, 1 USCMA 207, 2 CMR 113. The accused concedes that, from the number of his purchases, "it is a fair conclusion" that some were not for his own use. With sixteen watches and five radios bought in a sixty-day period, it is almost superfluous to say that the evidence entirely justifies the concession. It is vigorously contended, however, that the conceded inference is not broad enough to show the probable purpose for the purchases. The accused argues that it is as reasonable to infer that he made the purchases for gifts, or as an agent for authorized persons, or even for resale to these persons, as it is to conclude that he proposed to resell his purchases to unauthorized persons. We may assume

arguendo that if the evidence merely established the accused's purchases, it would be "speculation in the purest form" to say that his only probable purpose was to resell to unauthorized persons. United States v. Jones, 2 USCMA 80, 6 CMR 80. But the record contains other evidence which must be considered.

Two facts stand out. The first is that the accused sold "a few" exchange items to a Japanese National who, under the provisions of Circular 54, was not authorized to purchase such items. These purchases did not include merchandise of the kinds alleged in the specifications, but it is indisputable that direct evidence of some illegal resales tends to establish the accused's purpose in making other purchases. United States v. Petty, supra; United States v. Hunter, 2 USCMA 37, 6 CMR 37. The second fact is the accused's falsification of his name and organization on a number of sale slips. A reasonable inference from this is that the accused had a guilty purpose in making the purchases. Considering all the evidence and the reasonable inferences to be drawn from it, we conclude that the Government established probability of the commission of the offenses charged. Accordingly, we answer the certified question in the negative.

We turn now to the sufficiency of the law officer's instructions. The accused contends that they are fatally defective in that they do not include the substance of his two requests. For convenience, we look initially to the question of whether the law officer should instruct the court that it must first find evidence of the corpus delicti before it can consider the accused's pretrial statement. The requirement of corroboration is set out in the Manual as follows:

"An accused cannot legally be convicted upon his uncorroborated confession or admission. A court may not consider the confession or admission of an accused as evidence against him unless there is in the record other evidence, either direct or circumstantial, that the offense charged had probably been committed

by someone." [Manual for Courts-Martial, United States, 1951, paragraph 140a, page 251.]

In United States v. Dolliole, 3 USCMA 101, 103, 11 CMR 101, we pointed out that this requirement "follows the prevailing American law on the subject." It is appropriate, therefore, to ascertain what place, if any, the principle has in the instructional pattern.

A number of state courts have held that, when the evidence of the corpus delicti is not substantial, the trial judge must instruct the jury that it must find probability of the commission of the offense, before it can consider the accused's pretrial statements. Hawk v. Commonwealth, 284 Ky 217, 144 SW2d 496; People v. Clark, 117 Cal App2d 134, 255 P2d 79. See also: 20 Am Jur, Evidence, § 1233, pages 1086, 1087; and 53 Am Jur, Trial, § 285, pages 240–241. This principle also is regarded with favor in the Federal courts. Iva Ikuko Toguri D'Aquino v. United States, 192 F2d 338 (CA9th Cir 1951), cert den 343 US 935, 96 L ed 1343, 72 S Ct 772; Flower v. United States, 116 Fed 241 (CA5th Cir 1902). See also: George v. United States, 125 F2d 559 (CA DC Cir 1942). In the D'Aquino case, the Court of Appeals for the Ninth Circuit said (page 357):

"Another instruction requested by appellant and which bore upon the appellant's admissions or so-called confessions, was defendant's proposed instruction No. 30a as follows: 'You cannot consider the defendant's admissions upon any of the issues of (1) citizenship (2) aid and comfort or (3) intention unless you first find that the Government has introduced other credible corroborative evidence on the same issue. Pearlman v. U. S., 10 F. 2d 460, 461, 462 (CCA 9). Goff v. U. S., 257 F. 294 (CCA 8).' We think there was no occasion for giving any such instruction here where there was substantial proof of the corpus delicti wholly apart from the admissions or confessions."

To the extent that it is consistent with military law and necessity, this Court has followed Federal civilian

precedents. United States v. Fisher, 4 USCMA 152, 15 CMR 152. We have considered the general requirement of corroboration in a number of cases. Although we have never directly ruled upon the necessity for a cautionary instruction on the subject, it has been suggested that our cases point to the conclusion that the "idea of *corpus delicti* is one which addresses itself solely to the judge and not the jury." United States v. Manuel, 3 USCMA 739, 14 CMR 157, page 745, concurring opinion, Judge Brosman. However, we need not decide whether the Federal courts have actually adopted the instructional requirement with such directness as to make their decisions persuasive precedents. Neither need we decide whether the military rule is, or should be, different from the civilian. Because of other deficiencies in the instructions, it is unnecessary to decide these questions in this case.

In instructing on the elements of the offense, the law officer apparently used, in somewhat varied form, the statement of the elements of proof set out in the Manual. Paragraph 171, page 324. Nevertheless, the accused contends that the instruction is fatally deficient. He maintains that it fails to apprise the court it must find that the accused entertained a specific intent to resell to an unauthorized person.

When instructing on the elements of proof, recourse to pro forma incantations of the Manual's general statements of proof is dangerous. Thus, in United States v. White, 2 USCMA 439, 9 CMR 69, we held that an instruction was legally insufficient, even though it followed the Manual form, when it failed to include the elements of larceny, as part of the essentials of the offense of stealing from the mails in violation of Article of War 96. Similar inadequacy was found in the Manual's form of instruction on a charge of assault aggravated by a specific intent. United States v. Lookinghorse, 1 USCMA 660, 5 CMR 88. In United States v. Simmons, 1 USCMA 691, 5 CMR 119, we called attention to the incompleteness of the statement of proof for a violation of Article 90. In fact, in one of our early cases we strongly

cautioned against the practice of indiscriminate reliance on the general wording of the Manual. In United States v. Williams, 1 USCMA 231, 233, 2 CMR 137, we said:

". . . Apparently, law officers have not given due consideration to defining the crime accurately. Too much attention is being placed on the wording of the Manual to the effect that the instruction may be given in the language of the applicable subparagraph. That requirement is permissive, and in certain instances the contents may be adequate to present fairly the material issues. However, there are offenses which are not sufficiently defined and the elements must be obtained from the punitive article or from some other sources. The 'Discussion' and 'Proof' contained in the Manual quite often make general statements in reference to the crime, without specifically pointing out the particular and necessary elements, and in many instances the remarks include statements which are not fitted to the issue involved. Some discrimination is required to extract from both the 'Discussion' and 'Proof' the essential elements of the offense or offenses shown by the evidence, and law officers should make certain that those necessary to a proper definition of the crimes are called to the attention of the courts-martial members."

We are now asked to find legal inadequacy in the Manual's statement of the elements of a violation of Article 92. However, we need not reach that broad issue.

The measure of the legal sufficiency of an instruction is whether it provides the court with the necessary guideposts for an informed deliberation on the guilt or innocence of the accused. United States v. Williams, supra; United States v. Grossman, 2 USCMA 406, 9 CMR 36. It is axiomatic, therefore, that in the absence of a plea of guilty or of waiver, a failure to instruct on every essential element of the offense charged is prejudicial error. United States v. Rhoden.

**713**

1 USCMA 193, 2 CMR 99. So, too, it is prejudicial error to refuse to instruct on at least the substance of a requested instruction, which if given, would materially assist the court in deciding the issues before it. United States v. Bey, 4 USCMA 665, 16 CMR 239; United States v. Offley, 3 USCMA 276, 12 CMR 32. In this case, the accused asked that the court be specifically advised that before it could convict it must find that "at the time the accused purchased the item alleged in the Specification he intended to resell the item to a person or persons not included within the classes" authorized to buy in an Air Force post exchange. In its minimal aspect, the request must be regarded as a request for at least clarification of the general instruction. Consequently, if the subject matter is reasonably in issue and the substance is not fairly comprehended in the instructions given, the law officer's refusal to consider the request was error. United States v. Short, 4 USCMA 437, 16 CMR 11; United States v. Phillips, 3 USCMA 137, 11 CMR 137.

Under the circular, more than a mere purchase is required to constitute a violation of its provisions. The purchase must be accompanied by a particular mental attitude. In the language of the Circular, it must be "for the purpose of resale . . . to . . . any person who himself is not authorized to purchase from an exchange." The accused's requested instruction substitutes the words "intended to" for "purpose of" but the substitution does not affect its meaning. Plainly, it seeks to define, in more precise terms than the general instruction, the limits set by the Circular itself. In its subject matter therefore, the request is correct; and it is clearly sufficient to have put the law officer on notice of the issue the accused desired to present to the court. United States v. Phillips, supra. The remaining question then is whether those limits are not also demarcated in the instructions actually given. The Government contends that they are.

At the outset, we put aside the Government's contention that the closing arguments of counsel "placed emphasis on the necessity for the evidence to show purpose of resale," and, thereby, served adequately to inform the court of the necessity of a finding on this issue. True, under certain circumstances defense counsel's own correct enumeration of the elements of the offense and his other conduct may constitute a waiver of his right to object to the failure of the law officer to elaborate fully on those elements in his instructions; but no possible basis for waiver exists here. Cf. United States v. Smith, 2 USCMA 440, 9 CMR 70. The law officer did not adopt defense counsel's statement of the elements; he gave his own. The adequacy of these instructions was specifically questioned by the defense request to instruct. Thus, there was not agreement, but sharp conflict as to what the court should know in order to decide the question of the accused's guilt or innocence. No waiver can be spelled out of these circumstances. In the absence of waiver, we cannot regard defense counsel's closing argument as a legal substitute for an instruction which the law officer should have given. We must confine ourselves to the law officer's actual instructions. In them we find nothing which may fairly be said to include the substance of the accused's request.

That part of the instruction which comes closest to the issue is the reference to "the manner alleged." That falls far short of presenting the point. First, the word "manner" usually suggests physical action, not mental attitude. Webster's New International Dictionary, 2d ed., page 1496. If the law officer intended the word to be understood in a broader sense than that accorded it in normal usage, it was certainly appropriate to convey his true meaning to the court. Second, it does not clearly delimit the relationship between the purpose to resell and the status of the resale customer. Under the Circular, the Government was required to establish not only that the accused had a purpose to resell, but that he proposed to resell to a person not

**714**

within the classes specifically enumerated. Cf. United States v. Gohagen, 2 USCMA 175, 7 CMR 51. The requested instruction would have materially clarified this issue. Consequently, had it, or its substance, been incorporated into the law officer's instructions it would have been of substantial help to the court in reaching its findings. We are of the opinion, therefore, that the law officer abused his discretion by refusing to instruct on the subject of the accused's request. United States v. Bey, supra.

The decision of the board of review setting aside the findings of guilty is affirmed. A rehearing is ordered.

BROSMAN, Judge (concurring):

I am able safely to concur in the principal opinion, for it is clear that the matter contained in it with respect to which I find myself in disagreement—or at least in doubt—may properly be characterized as dicta. I am referring, of course, to the question of whether "the idea of *corpus delicti* is one which addresses itself solely to the judge and not the jury—to the law dispenser rather than to the fact finder." See my separate opinion in United States v. Manuel, 3 USCMA 739, 14 CMR 157.

LATIMER, Judge (concurring in the result):

I concur in the result only, as, in addition to my statement below, I have reservations on other concepts announced which are not material to the result.

There are twenty separate specifications in this case and each alleges a separate offense. With the exceptions of the date and the description of the article purchased all read the same. Therefore, I need only quote one to disclose the important allegations of all.

"Specification 1: In that . . . did at . . . on or about 1 December 1952, violate a lawful general regulation, to wit: Paragraph 10h, General Headquarters, Far East Command Circular Number 54, dated 26 October 1950, by purchasing an Air Force Exchange item, to wit: One (1) wrist watch (men's) of a value of about $9.75, for the purpose of resale to a person not authorized to purchase from an Air Force Exchange."

The instructions which concern us required the court-martial to find as follows: (1) that there was in effect a lawful general regulation as alleged, and (2) that at the time and place and in the manner alleged, the accused violated the general regulation. The instructions were meager, but if followed, they required a finding that the article was purchased for the purpose of resale to an unauthorized person before a finding of guilty could be returned. The requested instruction merely covered the same subject in more detailed language.

My reason for concurring in the result is that my associates have, in prior cases, announced legal principles contrary to my contention and their views have become the law. (United States v. Gilbertson, 1 USCMA 465, 4 CMR 57.)