UNITED STATES, Appellee

v

ROBERT K. SEIGLE, Airman Basic U. S. Air Force, Appellant

No. 26,584

July 20, 1973

*Lieutenant Colonel James LaBar* argued the cause for Appellant, Accused. With him on the brief was *Colonel George M. Wilson.*

*Major Stark O. Sanders, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Colonel C. F. Bennett.*

## OPINION OF THE COURT

DUNCAN, Judge:

The appellant, Airman Basic Robert K. Seigle, after having been given all cautionary warnings required, confessed in writing to larceny of 74 phonograph record albums and a ·General Electric portable phonograph from the Base Exchange at Minot Air Force Base. Herein, we are concerned with whether there is sufficient evidence corroborative of the confession as required by paragraph 140a(5) Manual for Courts-Martial, United States, 1969 (Rev.). Our review further enjoins upon us the duty to determine the effect of the military judge's declination, after request by the defense, to instruct the jury on the corroboration requirement. Hereinafter, the reasons for our affirmance of the action of the Court of Military Review are set forth.

■ Paragraph 140a(5) of the Manual conditions the admission in evidence of an accused's confession upon the presence of independent evidence "which corroborates the essential facts admitted sufficiently to justify an inference of their truth." That paragraph provides for a lesser degree of proof than was required under the 1951 Manual.[1] United States v. Hise, 20 USCMA 3, 42 CMR 195 (1970). Like many legal standards applicable at trial, the standard called for by present paragraph 140a(5) of the Manual tends to defy further semantic structuring, but is, as we believe it should be, a standard that accommodates the facts of each case so as to generate fairness in this troublesome area of trial practice. Following the in-terpretation of the Manual change in *Hise,* we believe that the new standard does *not* require that there be some independent evidence tending to prove each element of a crime as a threshold requirement for the admission of the confession in evidence. What evidence of record leads us to hold that the corroboration requirement is fulfilled?

### I

### THE ACCUSED

Seigle turned over to law enforcement authorities 74 phonograph records and a General Electric phonograph and confessed in writing that he stole the items from the Base Exchange over a 2-week period beginning the first part of January 1972. The confession, admitted in evidence over appellant's objection,[2] also recites that Airman Martinez was with him when he stole an album; that both Airmen Martinez and Durant were with him when he stole the phonograph on about January 10, 1972; that both those individuals, as well as Airman McDaniels, had knowledge of his thefts. The appellant also admitted stealing the records because he wanted them, and that he figured that if he were caught he would be able to get out of the service.

### MARTINEZ

Airman Roy Martinez,· a social friend of appellant, stated that he had accompanied Seigle to the Base Exchange two or three times during the months of January and February 1972, and on one occasion saw him take a record album without paying for it.

---

[1] The 1951 Manual for Courts-Martial, paragraph 140a, provided in part that:

A court may not consider the confession or admission of an accused . . . unless there is . . . other evidence, either direct or circumstantial, that the offense charged had probably been committed by someone.

[2] Appellant contended he lacked the requisite mental capacity to consent to interrogation and to waive the right to remain silent and to have the assistance of counsel. The military judge admitted the confession in evidence and also charged the jury regarding the issue of the voluntariness of the confession. That issue is not a subject of our review.

## DURANT

Airman Basic Paul Durant, who roomed with appellant, stated that during January and February 1972, he also, on five or six occasions, went to the Base Exchange with Martinez and Seigle. He testified that he saw Seigle take records from the Base Exchange without paying for them about six times, taking two or three at a time.

## LANDWEHR

Airman First Class Douglas Landwehr, a former roommate of the appellant, was present in Seigle's room around the end of January when Seigle stated to him, when discussing the record player sitting on the desk, that he "ripped it off from the BX," meaning that he had stolen it. Seigle also sold record albums to Landwehr.

## TRUDELL

Mr. Louis Trudell, the Base Exchange assistant store manager, identified 6 of the 74 albums in evidence as having come from the Base Exchange. Identification of the 6 albums was made through coded stock numbers, manufacturer's numbers, or Base Exchange breakaway tickets.

The General Electric phonograph (Prosecution Exhibit 2) was a standard stock item at the Base Exchange. Trudell could not state that the phonograph was stolen from the Base Exchange, but did testify that similar appliances were available for purchase in the area. However, he stated that the box in which the phonograph was packaged (a part of Prosecution Exhibit 2) bore a Base Exchange stock number.

## McDANIELS

Airman Walter McDaniels, a friend of Seigle, and Martinez' roommate during January and February 1972, stated that he and Martinez went with the appellant to the Base Exchange where Seigle put about 15 albums in a stack and a sold sticker was placed on the top one. Seigle then walked around the Exchange and left with the albums under his arm. He could not say whether or not the albums were paid for; however, Seigle told him that he "ripped them off."

Not forgetful of the basic mistrust courts have shown for confessions and admissions, for there is no evidence that faster quickens the pace down the path toward conviction than the accused's acknowledgment of guilt, the safeguards established to protect against those that are any less than voluntary, and reasonably accurate, remain. Paragraph 140*a*(5), MCM.

■ Martinez's testimony that he *saw* Seigle take record albums from the Base Exchange without paying for them is direct evidence of the appellant's larceny of at least one album. Corroboration becomes more concrete with the direct evidence from Durant that together with Martinez and Seigle he went to the Exchange where he saw Seigle take records about six times, two or three at a time. The appellant complains that the testimony of these witnesses furnishes no detail of the exact step-by-step method by which the thefts were accomplished. We believe the evidence to be relevant and properly in evidence. If, in the view of the defense, more detail were lacking, cross-examination was available to attack the general nature of the observations of the witnesses. Without reference to other evidence, we conclude that as to the 74 record albums there is ample evidence which bolsters the "essential facts admitted sufficiently to justify an inference of their truth."

■ Independent of the confession there is no direct evidence of a larceny of the phonograph. After Article 31 warnings, the appellant physically turned the phonograph over to investigators. The Base Exchange carried in inventory and sold a number of the same kind of record players during January and February 1972. Prosecution Exhibit 2, the phonograph and a box with it, were examined by Trudell. He testified that "[t]his particular one has our stock number on the side of the box." Adding only the additional circumstance that Seigle had been observed taking record albums from the Base Exchange without paying for them, we believe the total of these circumstances satisfy the requirements of paragraph 140*a*(5), MCM. Evidence that provides the basis for the inference that the phonograph, physically turned in by the appellant, was

**22 USCMA 405**

once a part of the stock of the Base Exchange, alongside appellant's observed theft of record albums, permit our finding that there was sufficient evidence that the confession was not made up by him with the intent to deceive.

The confession together with other evidence of record provides a sufficient fact basis from which the appellant could be found guilty beyond a reasonable doubt of the larceny of the record albums and the phonograph.

## II

This Court has not decided whether the question of corroboration of confessions and admissions is to be decided by the trial judge, instructed court members, or the court initially and the members subsequently. We believe it necessary now to decide that question.

There are a number of courts that have directed that the trial judge must instruct the jury to find sufficient corroboration of a confession before it may be considered by them; other courts have held that such an instruction is not required. Case law evidencing these positions is set forth in United States v Coates, 20 USCMA 132, 136, 42 CMR 324, 328 (1970), and in United States v Landrum, 4 USCMA 707, 16 CMR 281 (1954), and we need not again set them out herein. Members of the Court, on occasion, in dicta, have stated a preference for a rule solely addressing the matter to the judge. See Judge Quinn's dissenting opinion in United States v Winborn, 14 USCMA 277, 283, 34 CMR 57, 63 (1963), and Judge Brosman's concurring opinion in United States v Manuel, 3 USCMA 739, 744-45, 14 CMR 157, 162-63 (1954).

Instructing court members regarding application of legal principles, which are hard to fasten down even for those academically trained in law, is difficult for the most experienced jurist. Charging factfinders about the law is generally done with sanguine expectations, but the reality of the effort appears to be that it often falls short of providing sufficient understanding of the complexities of the law in point. Therefore, the encouragement has been to give those instructions which are clear, precise, and least complicated. Taking such a view much can be said for a rule which would let the judge alone decide the sufficiency of the evidence of corroboration of a confession. If, as here, court members are instructed regarding their duty to determine from the facts the voluntariness of a confession, and are also instructed that if it is deemed voluntary by them, then they must also decide whether there is "independent evidence . . . which corroborates the essential facts admitted sufficiently to justify an inference of their truth," the fear is that any hoped for clarity becomes lost in confusion. Moreover, the concept, sufficiency of the evidence as distinguished from the weight of the evidence, is traditionally and rightfully so, a matter for a judge. The judge should determine what should or should not become evidence at trial, and paragraph 140a(5) concerns the concept of admissibility. Although admissibility and sufficiency of evidence are matters first for a judge's determination, it is awkward to think of court members deciding matters of sufficiency or admissibility at any stage of a trial.

It is also important that we not subvert the role of those who weigh the evidence based upon credibility considerations. This is the domain of the factfinders. Where the evidence that tends to corroborate a confession is in conflict, scant, or hazy, then credibility looms large and factfinding is a necessary prerequisite to determining whether the paragraph 140a(5) standard has been met. Arguably, fact matters should be decided by members rather than a judge if the integrity of our jurisprudential fundamentals are to be kept intact.

In stating the depth of the problem this issue brings, we believe we have communicated adequate reason why we cannot lay down a bright-line rule that cleanly disposes of all fact settings wherein the problem arises.

Paragraph 140a(2), MCM, provides in part:

A ruling of the military judge or the president of a special court-martial without a military judge that a confession or admission of the accused is admissible does not establish for the

members of the court that the statement was voluntary. Such a ruling, although it must be based on an interlocutory finding that the statement was voluntary, merely places the confession or admission before the members of the court, that is, the ruling is final only on the question of admissibility. If a ruling has been made that a confession or admission of the accused is admissible and evidence raising an issue as to the voluntariness of the statement has been introduced in open session, the military judge, or the president of a special court-martial without a military judge, should instruct the court in open session that each member of the court, in connection with his deliberation upon the findings of guilt or innocence, should consider the evidence regarding the circumstances under which the statement was obtained with a view to determine whether the statement was voluntary and must disregard the statement entirely as evidence against the accused if he is not convinced beyond a reasonable doubt that it was voluntary . . . .

Paragraph 153a, MCM, provides in part that:

[A] conviction cannot be based upon uncorroborated testimony given by an alleged victim in a trial for a sexual offense or . . . by an accomplice in a trial for any offense, if . . . the testimony is self-contradictory, uncertain, or improbable. . . . When appropriate, the above rules should, upon request by the defense, be included in the general instructions of the military judge . . . .

Note that paragraph 140a(5) requiring corroboration of a confession, speaks only of admissibility, and, unlike paragraphs 140a(2) and 153a, does not require any instructions by the military judge; no other provision of law calls for such an instruction regarding corroboration of a confession.

A quick look at often used rules of statutory interpretation is productive of a conclusion that since the Manual in the instances cited above required proper instructions, the failure to include such a provision in paragraph 140a(5) illustrates an intent that no instruction is required. Although such a rule of interpretation is valuable, it is by no means always our sole resource for rationale.

■ We view as best for military justice that the question of the admissibility of the confession is one solely a matter for determination by the military judge, with the exception of those situations where the independent evidence necessary for corroboration of a confession or admission is substantially conflicting, self-contradictory, uncertain, or improbable. In that event, upon request, the military judge, after being satisfied that the evidence of corroboration is sufficient, should charge upon the necessity that the essential facts admitted in the confession must be found to be corroborated as a condition to its consideration as proof against the accused.

With due regard to and full knowledge of the potential the rule we announce has for making the difficult task that court members now have even more complex and difficult, we believe it to be worth the trouble it brings. There are those exceptional cases where those who credit testimony must participate if the concept of fairness is to be maintained.

■ Finding in the case before us that the evidence exclusive of the confession mentioned hereinabove is not conflicting, self-contradictory, uncertain, or improbable, the military judge did not err by refusing to charge as requested by defense counsel.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN concurs.

QUINN, Judge (concurring):

I concur in the affirmance of the findings of guilty, but for the reasons set out in my dissent in United States v Winborn, 14 USCMA 277, 34 CMR 57 (1963), I disagree with the holding of the majority as to the necessity of instructions on corroboration of a confession.