UNITED STATES, Appellant and Cross-Appellee

v

ALLEN G. McFERRIN, Private E–2 (formerly Sergeant E–5), U. S. Army, Appellee and Cross-Appellant

11 USCMA 31, 28 CMR 255

No. 13,122

Decided November 20, 1959

*First Lieutenant Richard P. Nee* argued the cause for Appellee and Cross-Appellant, Accused. With him on the brief were *Lieutenant Colonel W. H. Blackmarr, Major Edward Fenig,* and *Captain James A. Hagan.*

*First Lieutenant Allen I. Saeks* argued the cause for Appellant and Cross-Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

George W. Latimer, Judge:

I

The accused was convicted of the larceny of an allotment check made payable to his wife and forgery of the same instrument, in violation of Articles 121 and 123 of the Uniform Code of Military Justice, 10 USC §§ 921 and 923, respectively. In addition, he was found guilty of assault and battery contrary to Article 128 of the Code, 10 USC § 928, and drunk and disorderly conduct in a public place, violative of Article 134 of the Code, 10 USC § 934. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for one year. The convening authority approved the sentence but a board of review in the office of The Judge Advocate General of the Army set aside the findings of larceny and forgery for the reason that the evidence aliunde the confession did not show the probability that the offenses of larceny and forgery had been committed. Pursuant to its findings, the board ordered a rehearing and The Judge Advocate General of the Army certified the record to this Court to determine the correctness of the decision. Subsequently the accused filed a petition for grant of review, and by our order we authorized arguments on the following issue:

"Whether the law officer erred in overruling the defense motion for a new Article 32 investigation."

We will discuss the two questions in reverse order.

II

The report of the officer conducting the pretrial investigation discloses that the accused was advised of his rights to have counsel represent him at that investigation. The entries on the report show he was informed that he could be represented by the following: (1) Civilian counsel if provided by him; (2) military counsel of his own selection if such counsel was reasonably available; or (3) counsel appointed by the officer exercising general court-martial jurisdiction over the command. The report further shows that the accused did not request counsel to assist him at the hearing.

The gist of accused's argument is that while he was advised of his right to have the assistance of counsel, the investigating officer's report fails to show he was informed that the word counsel meant a lawyer who was qualified within the meaning of Article 27(b) of the Uniform Code of Military Justice, 10 USC § 827. That Article provides for the qualifications of counsel who may be detailed to represent an accused when he is being tried before a general court-martial. In United States v Tomaszewski, 8 USCMA 266, 24 CMR 76, a majority of this Court held that an accused, upon his request, was entitled to have a lawyer qualified to practice before a general court-martial represent him at an Article 32 investigation. Accused relies heavily on that decision but his reliance is misplaced for there is little similarity between the facts of the two cases. There the accused was informed he could "have an officer, not a lawyer" and the Government "possibly could not give him a lawyer but he would have a lawyer during the trial." That representation put a content into the word counsel which misled the accused with respect to his right, but that situation does not concern us here for in the case at bar no such misunderstanding arose.

Considering the advice given to this accused in its entirety, it is apparent he could not have been lulled into a belief that any officer could appear as his attorney. In advising the accused, the investigating officer used the word counsel four times. First, accused was told generally that he was entitled to have counsel represent him at the investigation. Second, he was notified he could obtain civilian counsel to assist him. Third, he was informed military counsel of his own selection would be detailed if reasonably available. Fourth, he was told that if he desired, counsel would be appointed by the officer exercising general court-martial jurisdiction.

The thrust of the defense argument before this Court is that to persons in the military service the word counsel is a word of art and means any officer. We have some reservations about that generalization, but we need not accept or reject it for the defense does not point to any fact which indicates the accused so interpreted the word. In that connection, we point out that not once did the investigating officer imply that the accused would not be furnished a lawyer, and the advice was not limited to counsel practicing in the military field for it mentioned civilian counsel. Certainly, it is a fair inference that accused understood the term civilian counsel to mean an attorney admitted to practice. If so, there would be no reason for him to assume that military counsel would be less qualified. He was a twenty-four-year-old soldier with a high school education, who had held the rank of sergeant, and there is nothing in the record to suggest that he was inexperienced in the ways of civilian life. While he asserts his point vigorously, when it is laid bare he merely asks this Court to reject the usual understanding of the word and speculate that he was misinformed because the report does not state affirmatively that he was advised by the investigating officer that counsel in fact meant lawyer. Significantly, when the motion for appropriate relief was made, the law officer asked defense counsel if he desired to present any evidence in support of the motion and the defense declined, making the naked assertion that the report spoke for itself. Obviously, on that sort of record we would be required to resort to sheer conjecture to sustain the contention of the accused. While an accused need never testify, if, ██ on a preliminary motion, he asserts he has been ill-advised of his rights to counsel, some evidence in support of his contention should be found in the record. Finding nothing in this case from which we can reasonably infer that accused did not fully understand he was entitled to the assistance of a lawyer, we overrule the assignment of error.

## III

The certified question brings into issue a principle we have announced on a number of occasions. █ Stated simply it is, what minimum corpus must be established by the prosecution before it may utilize a confession made by the accused? In United States v Landrum, 4 USCMA 707, 711, 16 CMR 281, 285, a unanimous Court laid down this principle:

"Military law proscribes a conviction founded solely upon an accused's uncorroborated confession or admission of guilt. Manual for Courts-Martial, United States, 1951, paragraph 140a, page 251. The record must contain substantial, independent evidence tending to establish the existence of each element of the offense charged. United States v Isenberg, 2 USCMA 349, 8 CMR 149. This evidence may be either direct or circumstantial. United States v Petty, 3 USCMA 87, 11 CMR 87."

Subsequent to that decision, the United States Supreme Court in Opper v United States, 348 US 84, 75 S Ct 158, 99 L ed 101, announced a rule which appeared to be at variance with the test we prescribed. Thereafter, the question was again raised in this Court, and in United States v Villasenor, 6 USCMA 3, 19 CMR 129, the Court reaffirmed the doctrine of *Landrum*. While the Chief Judge concurred in *Villasenor,* supra, he announced a preference for the rule set out by the United States Supreme Court in *Opper*, and in United States v Mims, 8 USCMA 316, 24 CMR 126, he dissented from the majority opinion, basing his dissent on the holding of the Supreme Court. With due respect to the views of the Chief Judge, Judge Ferguson and the writer find no good reason to overturn the long-established rule, and we use it to govern this decision.

The Government, in seeking to overturn the decision of the board of review, relies principally on the argument that the instant case is governed by our holding in United States v Manuel, 3 USCMA 739, 14 CMR 157. We find no necessity for retreating from the views expressed by a majority of the Court in that instance, for the facts of the

two cases compel different results even though the same rule is used.

The evidence touching on the certified issue in this case stated most favorably for the prosecution is as follows: A Government allotment check made payable to Helen M. McFerrin, wife of the accused, was cashed at McRae's Gulf Service Station on October 31, 1957. On or about March 26, 1958, the check was returned by the bank to the service station with a notation that the face amount of the check had been charged against the account of the depositor. Appearing on the reverse side of the instrument was the endorsement "Helen M. McFerrin," which had been written by the accused. Some thirty days prior to the time the check was cashed at the service station, the accused executed an allotment form which disclosed that his wife, the allottee, had changed her place of residence. While accused's confession is sufficient to prove the alleged crimes beyond a reasonable doubt, the foregoing resume of the evidence is all that supports its admission.

In determining the question before us it is necessary that we advert to the essential elements of larceny and forgery. A larceny is the wrongful taking, obtaining, or withholding from the possession of the true owner any money, personal property, or article of value with intent permanently to deprive the other person of his property. To show the probability that that offense was committed in this case, the Government must establish that someone wrongfully took or obtained the allotment check from the victim with intent permanently to deprive her of that particular property. To support that showing the Government merely established that the accused signed his wife's name to the instrument and that some five months later an endorser was charged with the amount of the check. There is no showing that accused cashed the check or under what circumstances it was obtained or endorsed. For aught that appears it could have been delivered to him by his spouse. The mere fact that her address had been changed proves nothing in the absence of evidence that she was not living with the accused, that the family unit had been disrupted, or that the marital felicity had ended. Accordingly, we find nothing in this record which remotely shows the probability that the check was wrongfully obtained or taken from the payee or that the proceeds realized when it was cashed were not turned over to her or used for her legitimate purposes. Consequently, the evidence is insufficient to show the probability of a larceny having been committed.

As to the forgery charge, the proof must show the probability that the signature was falsely made and that the person by affixing it to the check intended to defraud. Because the evidence establishes that the accused endorsed the check we are not concerned with the identity of the alleged culprit. But we are troubled with the lack of evidence on certain of the elements which it is necessary to establish to meet the requirements of the rule of corroboration. The Government argues some evidence which is obviously hearsay and of no relevancy to the question. So far as we have been able to ascertain, the competent evidence of record, outside of the confession, does not negate the authority of the accused to sign his wife's name, nor does it establish that the proceeds of the check were not used for her benefit. Forgery may not be inferred merely from the fact that a husband signs his spouse's name to a check. Neither may intent to defraud be presumed from that act. In resolving this issue, we need not go so far as to hold that either spouse is presumed to have the authority to sign the other's name to a document. All we need to do in regard to this offense is take the position that the signing of a wife's name to a negotiable instrument shows neither authority nor lack of authority. It was incumbent upon the Government to show the probability that the accused did not have the authority to sign his wife's name on the instrument in question and this record is devoid of the slightest suggestion that he was not authorized to negotiate the check in the manner he did. The same can be said about the

**35**

intent to defraud for, as to that element, the record is silent.

In view of the Government's reliance on United States v Manuel, supra, we believe it advisable to point out the distinguishing facts. In that case, when the accused presented the money order to be cashed, he was informed by the clerk at the post office that the money order had been reported as having been lost. He replied that the payee of the money order had endorsed it to him. The endorsement on the back of the instrument was consistent with this assertion, for it consisted of a special endorsement to the accused followed by the purported signature of the payee. Accused's contention in that instance that the money order had been endorsed to him by the payee was proven false by testimony which showed that the accused himself had prepared the endorsement. Accused's statement was made while attempting to obtain the proceeds, and it negated his authority to sign the payee's name. In addition, the falsity showed the probability that the signature was affixed with intent to deceive. Moreover, in that situation, there was no showing of any confidential relationship and, while it is not unusual for a husband or wife to have blanket authority to sign the other spouse's name, it is uncommon for a third party stranger to be so endowed.

Finally, in Judge Brosman's concurring opinion in Manuel, supra, the following statement is found:

". . . As to corroboration, common experience may serve as a basis for the assertion that the present-ment, without explanation or indication of agency, of a money order on which the payee's signature has been indorsed by a third person—to wit, him who presents it—indicates that the signature has 'probably' been forged."

It must be remembered, however, that we were there concerned with what purported to be a special endorsement by the payee to a third person stranger who presented the instrument, falsely representing it to have been duly endorsed by the payee—factors not present in the case at bar. Those differences, together with the one hereinabove pointed out demonstrate that the instant case is to be distinguished from Manuel, and that our present holding is entirely consistent with the principles we there announced.

Accordingly, since the evidence, apart from accused's confession, is not sufficient to establish the probability that either a larceny or a forgery were committed, the decision of the board of review is affirmed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

I concur with the majority on the pretrial issue. However, I disagree with the conclusion on the certified question. In my opinion, there is sufficient independent evidence to justify admission of the accused's confession. I would answer the certified question in the negative and return the record of trial to the board of review for reconsideration.