KRUEGER, Plaintiff in error, v. STATE, Defendant in error.
[Three Appeals.]

*Nos. State 135, 136, 137.   Argued June 7, 1968.—Decided
June 28, 1968.*
(Also reported in 159 N. W. 2d 597.)

For the plaintiff in error there was a brief and oral argument by *Robert H. Friebert,* public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Daniel L. La Rocque,* district attorney of Marathon county.

HALLOWS, C. J. The sole issue is whether Krueger was properly convicted of forgery. He was charged under sec. 943.38, Stats.,[1] on the complicity theory because he aided and abetted one Laube to commit the principal act of forgery. Krueger's argument on appeal is that the

---

[1] "943.38 **Forgery.** (1) Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, may be fined not more than $5,000 or imprisoned not more than 10 years or both:

"(a) A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights; or

". . . ."

checks were made lawfully and signed by Laube in the name of Krueger with his authority and therefore were genuine checks and not forgeries, and at most since the checks were worthless Laube's acts might constitute the passing of worthless checks.

This position on appeal has no support in the evidence although the evidence at the trial was conflicting. The state's witnesses, Dale Holley, Leonard La Roche, Marsha Stoutenburgh and Fred Laube testified that they were together with Krueger in a car on August 3, 1966, when Laube used one of Krueger's personal checks to write out a check dated July 31, 1966, for $50, payable to "Marsha Schultz." Laube then signed Mark Krueger's name to the check, which was cashed by Marsha Stoutenburgh, and the $50 split evenly among the five persons, including Krueger. Krueger denied he was present, but all four of the others testified Krueger was not only present when the check was written but the five had discussed what they were doing; that all knew the check was worthless, the payee was fictitious and the date was wrong; and that Krueger knew what was going on, did not object to the use of his checks or to sharing the proceeds, and did not claim his checks had been stolen.

The state's witnesses also testified that on the next night, August 4, 1966, all except Miss Stoutenburgh were present in Krueger's apartment with him, and Laube again used one of Krueger's personal checks to write a check dated August 2, 1966, for $40 to a fictitious payee named "Ken Peterson," and Laube again signed Krueger's name to the check. A coin was flipped to determine who would cash the check and Holley lost. He cashed the check and the $40 proceeds were equally divided among the four, including Krueger.

Both checks were dishonored. Krueger's checking account was consistently overdrawn during the several months before these incidents. Laube testified that shortly before he used Krueger's checks, Krueger gave him his

checkbook, told him there was no money in the account, but Laube could use the checks so long as he did not say anything if he were caught. Krueger denied any involvement and testified he had never seen either of the two checks until he saw them at the trial; that he had not given his checkbook to anyone, but his checkbook had simply disappeared from his apartment and he did not know what happened to it.

Thus the testimony of Krueger is completely at odds with his argument on appeal that he had authorized Laube to execute checks in his name as his authorized agent. This belated theory cannot be superimposed upon the facts. There is nothing in the testimony of the prosecution witnesses which establishes a principal-agent relationship between Krueger and Laube. The state's evidence shows Krueger gave his checkbook to Laube, who, later in Krueger's presence executed two checks, signing Krueger's name as the maker without objection. These facts do not give rise to a relationship of principal and agent. There is no "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." 1 Restatement, *Agency* 2d, p. 7, sec 1. Laube, with intent to defraud, falsely signed Krueger's name as maker of a check. This execution of the checks was not genuine either as principal or as an agent and the signature was falsely made within the meaning of the section. *First American State Bank v. Aetna Casualty Surety Co.* (1946), 25 Wis. 2d 190, 195, 130 N. W. 2d 824. Nor are these facts sufficient to establish an agency relationship or authority under sec. 403.403 (1) of the Uniform Commercial Code. *See also* 1 Anderson, *Uniform Commercial Code*, p. 623, sec. 3–403:1.

Krueger was properly convicted of forgery although he did not actually sign the checks. The record amply establishes that Krueger intentionally aided and abetted Laube's action in the commission of the forgery and there-

fore he himself was properly convicted of forgery under sec. 939.05, Stats. As we pointed out in *State v. Nutley* (1964), 24 Wis. 2d 527, 554, 555, 129 N. W. 2d 155, a person may be vicariously liable for a substantive crime directly executed by another if he intends and his acts aid another person in the execution of a crime. Here, Krueger had a "stake in the outcome." He gave his checkbook to Laube; he knowingly participated in the execution of the checks; and he shared in the proceeds. *See also Carter v. State* (1965), 27 Wis. 2d 451, 134 N. W. 2d 444, 136 N. W. 2d 561, in which we held the driver of the getaway car was guilty of armed robbery although he carried no arms and did not enter the premises robbed.

*By the Court.*—Judgment and orders affirmed.