**UNITED STATES, Appellee,**

v.

**Private First Class Moses J. HENRY, Jr., 435–27–4525, United States Army, Appellant.**

**CM 448334.**

U.S. Army Court of Military Review.

30 July 1986.

* Corrected.

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Major Jerry W. Peace, JAGC, Captain Clayton A. Aarons, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Byron J. Braun, JAGC, Captain Amaury R. Colon, JAGC (on brief).

Before DeFORD, WILLIAMS, and KENNETT, Appellate Military Judges

OPINION OF THE COURT

PER CURIAM:

Tried by general court-martial, appellant was convicted, pursuant to his pleas, of absence without leave (AWOL), forgery (nine specifications), and false swearing in violation of Articles 86, 123, and 134, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. §§ 886, 923, and 934 (1982), respectively. He was sentenced by the officer members to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. Pursuant to the terms of a pretrial agreement, the convening authority approved a reduced sentence of a bad-conduct discharge, confinement for 23 months and 29 days, and reduction to the grade of Private E–1.

On appeal, appellant asserts the military judge erred by failing to dismiss the charge and nine specifications alleging forgery because the making and uttering of the checks was not false. We disagree.

Appellant entered into a scheme with another soldier, Private First Class (PFC) Broxton, to obtain money fraudulently from the Post Exchange. Private First Class Broxton, who was experiencing financial problems, proposed that appellant sign Broxton's name as the drawer of checks belonging to Broxton, cash the checks using Broxton's military identification card, and divide the proceeds with Broxton. Appellant was scheduled to be separated from the Army within two months, and both Broxton and he assumed that appellant would be out of the Army and immune from criminal prosecution by the time the checks were returned for insufficient funds. Broxton believed he would be protected from prosecution because he would report that someone stole his checks and forged them.

Broxton thereafter gave appellant a number of blank checks. Nine of these checks, each in the amount of $100.00 and drawn on Broxton's checking account at the Air Defense Center Federal Credit Union [Fort Bliss, Texas], were then signed by appellant, using Broxton's name as the drawer, and were cashed by appellant, using Broxton's military identification card, at the Fort Campbell [Kentucky] Post Exchange, which was the named payee. Appellant made each check in its entirety, but did not indicate on the face of the checks that Broxton's "signature" was "by" appellant. The $900.00 cash received by appellant was divided with Broxton.

The scheme began to unravel when some of the checks were returned for insufficient funds before appellant was separated from the Army. Pursuant to the agreement between Broxton and appellant, Broxton dutifully reported to the criminal investigators that the checks had been stolen and that he had not written them. Undoubtedly to appellant's chagrin, however, Broxton also told the investigators that appellant had access to his room. At that point, the scheme completely unraveled.

Although not raising the issue at trial, appellant now contends his actions do not constitute forgery as he made and uttered the checks with Broxton's knowledge and consent. Appellant's assertion that he did not falsely make Broxton's signature to the checks because he had Broxton's permission to so sign is without merit.

Article 123, UCMJ, states:

Any person subject to this chapter who, with intent to defraud—

(1) falsely makes or alters any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice; or

(2) utters, offers, issues, or transfers such a writing, known by him to be so made or altered;

is guilty of forgery and shall be punished as a court-martial may direct.

The foregoing statute reflects the codification of the basic common law of forgery and uttering a forged instrument.[1]

The common law defined forgery as the fraudulent making or alteration of a writing to the prejudice of another.[2] Further, under common law, forgery denotes a false making (which includes every alteration of or addition to a true statement), a making *malo animo*, of any written instrument for the purpose of fraud or deceit.[3]

Here, appellant signed the name of his accomplice on nine bank checks supplied by the accomplice[4] and uttered the checks to

---

1. H.R.Rep. 491, 81st Cong., 1st Sess. 1 (1949), *reprinted* in 1 Index and Legislative History to the Uniform Code of Military Justice at 1233 (1985).

2. W. Blackstone, Commentaries 247.

3. See J.W.C. Turner and A. LL. Armitage, *Cases on Criminal Law* (3d Edition 1964) 611, *citing* East, Pleas of the Crown, Volume 2, 852 (1803).

4. With respect to the signature on the writing, one who signs the name of another as drawer of a check but adds the word "by" with his own signature, thereby indicating his authority to sign, is not guilty of forgery even though no such authority exists. *United States v. Gibson*, 1 M.J. 714, 718 (A.F.C.M.R.1975); para. 48c(2), Part IV, Manual for Courts-Martial, United States, 1984. This rule, however, does not apply to situations in which the purported authority to sign is not affirmatively indicated on the face of

the Fort Campbell Exchange for purposes of defrauding the Fort Campbell Exchange of the sum of $900.00. Appellant's intent to defraud is beyond question.[5] The scheme was designed by the participants to accomplish that goal. The fact that appellant had the consent of his accomplice to sign accomplice's name will not relieve appellant of criminal responsibility for forgery, as he created nine checks which he knew were invalid and would be refused upon receipt by the appropriate banking institution when presented for payment. The checks so created appeared to be genuine on their face but were not what they purported to be; consequently, the nine checks were forgeries in the truest sense.[6]

We have considered the issue personally asserted by appellant and find it to be without merit.

The findings of guilty and the sentence are affirmed.

---

the check itself. *United States v. Gibson,* 1 M.J. at 718, *citing, Ross v. United States,* 374 F.2d 97 (8th Cir.1967), *cert. denied,* 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967).

5. The intent to defraud has been said to be the essence of forgery. *United States v. Sheeks,* 16 C.M.A. 430, 37 C.M.R. 50 (1966); *United States v. Ebarb,* 12 C.M.A. 715, 717, 31 C.M.R. 301, 303 (1962). *Sheeks* and other cases, *e.g., United States v. McFerrin,* 11 C.M.A. 31, 28 C.M.R. 255 (1959), involving a husband's authority, or lack thereof, to sign his wife's name to a check as drawer or endorser are inapplicable to appellant's situation ("[W]hile it is not unusual for a husband or wife to have blanket authority to sign the other spouse's name, it is uncommon for a third party stranger to be so endowed," *United States v. McFerrin,* 11 C.M.A. at 36, 28 C.M.R. at 260).

6. See *United States v. Price,* 655 F.2d 958 (9th Cir.1981) and the cases cited therein; *Krueger v. State of Wisconsin,* 39 Wis.2d 729, 159 N.W.2d 597 (1968). The *Krueger* case illustrates the conviction of the person who supplied the checks on an aider and abettor theory of forgery.