**DYNAMIC MOVERS, INC., Plaintiff,**

v.

**PAUL ARPIN VAN LINES, INC., Defendant.**

**Civil Action No. 95–C–0764.**

United States District Court, E.D. Wisconsin.

March 3, 1997.

Martin J. Greenberg, Deutch & Greenberg, Robb A. Marcus, Marcus Law Offices, Milwaukee, WI, for Plaintiff.

Mark Steichen and Richard L. Schmidt, Boardman, Suhr, Curry & Field, Madison, WI, for Defendant.

## DECISION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

REYNOLDS, District Judge.

### INTRODUCTION

Paul Arpin Van Lines, Inc. ("Arpin"), and Dynamic Movers, Inc. ("Dynamic"), had a four-year relationship, which began with an agency agreement for hauling household goods. Dynamic solicited business for Arpin, and, when asked, moved and stored household goods. In other words, when a person moved from Wisconsin to Rhode Island and used Arpin, Dynamic may have been the actual mover. After a while, Dynamic also developed a relationship with Arpin for logistics, which is the hauling of finished products for manufacturers.

After four years, the relationship soured, and Arpin terminated the household agency agreement and stopped using Dynamic for logistics. Dynamic resents the way Arpin ended the relationship and believes Arpin has violated the law in three ways: (1) breached the agency agreement; (2) violated the Wisconsin Fair Dealership Law ("WFDL"), Wis.Stat. § 135.01 *et seq.*, and (3) interfered with Dynamic's business relationships. Although Arpin concedes that the breach of the agency agreement presents a triable issue, Arpin moved for summary judgment on the WFDL and tortious interference claims.

### SUMMARY JUDGMENT

Summary judgment is appropriate if there is no material dispute of fact and the moving party deserves judgment as a matter of law. Fed.R.Civ.P. 56(c). Based on the undisputed facts, Dynamic is not a dealer and there is no evidence of tortious interference; therefore, the court grants summary judgment for Arpin and dismisses claims I and III. The summary judgment process must reveal whether there are factual disputes. To focus the parties on the facts, this district requires specific procedures. The moving party must present the proposed undisputed facts, with a separate numbered paragraph for each factual proposition. Local Rule 6.05(a) (E.D.Wis.). The nonmoving party must identify those findings it disputes; it must identify them by numbered paragraph; and it must cite to the record for support of its position. Local Rule 6.05(b). The nonmoving party may also submit additional facts, listed by number. *Id.* In its reply facts, the moving party should only point how the record does not support the nonmoving party's facts. Local Rule 6.05(c).

■ Although Arpin complied with the rule, Dynamic submitted a factual narrative in its brief; it did not identify the specific proposed facts it was disputing. When Arpin pointed this out on reply, Dynamic submitted a letter that it believed it had complied with the rule, and, if it had not, the court should inform it. Notwithstanding Dynamic's belief, it obviously violated Rule 6.05(b).

The court could ignore Dynamic's factual statement entirely, a harsh penalty—but one allowed by Local Rule. *See* 6.05(d). By failing to comply with the rule, Dynamic's

problem is practical more than penal. Without the specific responses, the court may overlook a disputed fact; if the court has, Dynamic is at fault for failing to follow the rules and must live with the consequences.

## A. WFDL CLAIM

Dynamic is a Wisconsin corporation, and Arpin is a Rhode Island corporation. The amount in controversy exceeds $50,000.

Arpin transports household goods and other products, and uses a series of agreements to provide nationwide service for hauling household goods. It has over 1,000 trailers and has at least 50 employee-drivers. In addition, Arpin enters into agency agreements with local haulers. The agreements are non-exclusive. (Arpin may have multiple agents in any geographical area.)

Under the agreements, the agent solicits business for Arpin, and, at Arpin's request, the agent provides storage or hauling services. When the agent is hauling goods across state lines, it operates under the authority of Arpin's Interstate Commerce Commission license. The agent receives a commission for any business it solicits and receives a fee for any hauling it does for Arpin.

On October 21, 1991, Arpin and Dynamic signed an agency agreement. The agreement applied only to household goods; it lasted one year but automatically renewed; either party could terminate the agreement as long as it gave the other party 30 days notice.

After Robert C. Kuhns, the current owner, bought Dynamic in July 1993, Arpin required Kuhns to sign a new agency agreement. The new agreement became effective October 1, 1993 and had the same terms and conditions as the original agreement. Revenue from the household agency agreement was always less than 9% of the Dynamic's total revenue.

By the end of 1993, Dynamic was also working with Arpin on logistics. Dynamic booked and hauled logistic shipments for accounts in Wisconsin and Northern Illinois. Dynamic developed relationships with specific customers by meeting their scheduling needs. Dynamic, rather than Arpin, scheduled the logistic loads.

The logistic shipping quickly became the most important part of the Dynamic's business. In 1994, 40% of Dynamic's revenue came from logistic shipping on Arpin's behalf. Four of Dynamic's managers devoted 60–80% of their time to Arpin's logistic business.

On May 11, 1995, Arpin told Dynamic that the household agency agreement would end in 30 days. Apparently, Arpin also stopped using Dynamic for logistic shipments. Dynamic alleges that Arpin violated the WFDL.

Although the parties dispute whether Wisconsin law or Rhode Island law applies to their relationship, a conflict exists only if the WFDL covers the relationship. If Dynamic was not an Arpin dealer (meaning that the WFDL does not apply), Dynamic has no statutory claim under either state's law.

The WFDL protects dealers in their relationship with the grantor of a dealership. Most notably, a grantor of a dealership may terminate a dealer only with good cause and with ninety days' notice. Wis.Stat. §§ 135.03, 135.04. Obviously, Dynamic can seek the WFDL's protection only if it was a dealer for Arpin. A dealership exists if a person receives "the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol" and if "there is a community of interest in the business of offering, selling or distributing goods or services...." Wis.Stat. § 135.02(3).

■ Based on the undisputed facts, Dynamic had no community of interest with Arpin. More specifically, Dynamic's financial dependence on the household agency agreement was insufficient to create a community of interest. Only 9% of Dynamic's revenue came from the household agency agreement. Except in exceptional circumstances, a dealership requires that the dealer devote substantial resources or receive substantial revenue from the relationship. *Ziegler Co. v. Rexnord, Inc.,* 139 Wis.2d 593, 607, 407 N.W.2d 873, 879 (1987).

■ Dynamic does not argue that the household agency agreement alone creates a dealership; rather, it argues that the dealership includes the work it did to secure logistic hauling for Arpin. To decide whether a dealership exists, the court may have to look at more than the written contract. *Id.* at 608 n. 11, 407 N.W.2d 873, *Ziegler Co.*, 407 N.W.2d at 880. A written agreement may be one element of a larger relationship; at the same time, a dealership must be cohesive. Not every interaction between the parties is part of a single dealership. For example, selling computers to the public and selling them to schools are distinct activities, and the court considered each one separately to determine whether a community of interest existed. *Team Elecs. v. Apple Computer, Inc.*, 773 F.Supp. 153 (W.D.Wis.1991). If the products are different (or if they both have strong, distinct trademarks), if the dealer must provide different services for each product, if the customers are different, or if the parties treat the products as separate, considering both products as part of one relationship is an error.

■ Of course, courts must avoid making meaningless formal distinctions, which undermine the WFDL. Fortunately, there is no danger of that occurring in this case; legally and factually, transporting household goods and logistics were distinct. First, federal law preempts the application of the WFDL to logistics. Second, Dynamic has given an insufficient factual record to show that the businesses are related. Third, Dynamic has presented no evidence that the parties treated the two as related.

Under federal law, a state may regulate the "price, route, or service" of any motor carrier transporting household goods but not any other motor carrier. 49 U.S.C. § 14501(a), (c). If the WFDL applies to logistic shipments, it would affect the cost and service of shipping. Because the WFDL denies the grantor unfettered discretion in terminating an agent, shipping may cost more, and the state has limited how the grantor provides service in the state. Under § 14501(a), the federal government, not the states, regulates the shipping of logistics. Therefore, the court cannot consider the lo-

gistic business as part of a dealership for the WFDL.

Even without preemption, the logistic and household goods are too separate to be part of one dealership, at least on this record. Dynamic has told the court nothing about the obligations the parties had in the logistic relationship, besides vague generalities. There was no written agreement about logistic shipping; at best, Dynamic and Arpin had an unwritten agreement in which Dynamic provided booking services. Still, this alone does not create a dealership because the relationship for logistics could have been *ad hoc*. Nor does Dynamic have any evidence that the parties treated logistics and hauling household goods as related. *See Team Electronics*, 773 F.Supp. at 155–56. On the contrary, Arpin used a written agreement for hauling household goods but not logistics, suggesting that the markets were distinct.

Finally, hauling household goods requires different services than logistics. In the former, the agent deals with many customers on a one-time basis; trademarks and advertising are important. In the latter, the agent must develop long-term relationships; customer service and flexibility matter more than advertising. The difference between hauling household goods and logistics is at least as great as the difference between marketing computers to the public and to schools. *See Id.*

With its small revenue from hauling household goods and no argument on how hauling household goods created interdependence, there was no community of interest between Arpin and Dynamic, and, therefore, there was no dealership.

## B. MOTION TO COMPEL AND RE-OPEN DISCOVERY

■ On November 17, 1995, Dynamic served its interrogatories on Arpin. In April 1996, Arpin objected to Dynamic based on the number of requests. Finally, in September 1996, Arpin sent its responses, although they were incomplete. On January 31, 1997, Dynamic moved to compel answers to its interrogatories and to adjourn the trial so that it could conduct more discovery.

Roughly four-and-a-half months passed between the date Arpin served its responses and when Dynamic filed its motion, which was also three-and-a-half months after Dynamic filed its summary judgment brief, two weeks after discovery closed, and three weeks before trial.

The time has passed for discovery motions. From the record, Dynamic made no attempt to resolve the dispute after Arpin served its answers in September. This case is old, and the court has already extended discovery twice. Therefore, the court denies the motion to compel and to adjourn the trial.

## C. STATE TORT CLAIMS

Although Arpin moved to dismiss the state law claims for failing to state a claim, see Fed.R.Civ.P. 12(b)(6), it invited the court to consider more than the complaint and treat the motion as a motion for summary judgment under Fed.R.Civ.P. 56. Certainly, courts can look beyond the pleadings, consider other evidence, and transform a 12(b)(6) motion into a motion for summary judgment—provided the court gives the plaintiff notice of its intent or the plaintiff treats the motion as a summary judgment motion.

The decision to consider a motion to dismiss as a motion for summary judgment is discretionary, however. When a party files a dismissal motion at the dispositive motion deadline, this court generally refuses to transform a dismissal motion. If it did, a party could conveniently avoid submitting proposed findings of fact and still receive consideration on summary judgment. Even as a 12(b)(6) motion, however, Arpin's motion has merit, and the court grants it. In pleading tortious interference with its business relationships, Dynamic did not identify the relationships that Arpin had interfered with. Although the pleading standards are broad, the complaint must give the party notice of what it did wrong. By reading the complaint, Arpin would have no idea what relationships Dynamic was complaining about. The complaint failed to meet the liberal notice pleading requirements.[1]

## CONCLUSION

The court **GRANTS** summary judgment to Paul Arpin Van Lines, Inc., and dismisses the Wisconsin Fair Dealership Claim.

Dynamic must first establish that Arpin convinced Nieman to breach an existing contract, not to enter a business relationship or to end an existing relationship. *Federal Pants, Inc. v. Stocking*, 762 F.2d 561, 569 (7th Cir.1985). Nieman never breached the agreement with Dynamic. He was under *no obligation to work for* Dynamic, nor was he under an obligation to use his truck. Although Arpin convinced Nieman to end an existing relationship, Dynamic has no proof that Arpin acted improperly. At best, a jury could infer that Arpin offered Nieman a better deal, which is good, fair competition. Dynamic does not argue that Arpin threatened Nieman.

Donovan was a salesperson for Dynamic. In June 1995, Donovan told Dynamic that he had booked about 25 loads for Arpin directly. This fact does not establish a claim. In Wisconsin, employment is at will. Unless he was under contract with Dynamic, Donovan could moonlight for Arpin. Of course, he could not use Dynamic's confidential information, and he may have been in trouble had he been directing customers from Dynamic to Arpin. Dynamic tells the court nothing about those 25 deliveries, nor has Dynamic stated how Donovan's activities breached a contract with Dynamic. Dynamic has not developed its claim.

---

1. Even if the court considered the motion as a summary judgment motion, Dynamic would still lose. In response to the motion, Dynamic has provided the parties with whom Arpin interfered: Paul Nieman ("Nieman"), John Donovan ("Donovan"), Marc Ness, Interior Systems, Inc., Basic American Metal Products, Inc., Nimschoff Chairs, and Medline Industries, Inc. Although the affidavits correct the pleading error, Dynamic's factual record is insufficient. For everyone except Nieman and Donovan, Dynamic has done nothing more than identify the relationship.

Although more detailed, Dynamic's proof involving Nieman and Donovan is also incomplete. Nieman hauled trailers for Dynamic. Dynamic co-signed a loan with Nieman so that Nieman could buy a truck to haul Dynamic's trailers. Under the contract, although Nieman agreed to use the *trailer* only when working for Dynamic, the contract was silent on whether Nieman could use the *tractor* only when working for Dynamic.

In June of 1995, Arpin asked Dynamic to release Nieman from the agreement, but Dynamic refused. On June 26, 1995, Nieman called Dynamic and reported that he had an accident while making a delivery for Interior Systems. Although Interior Systems often used Dynamic, Dynamic never authorized or assigned that shipment. Nieman soon informed Dynamic that Arpin had rented a truck for him and that he would be working for Arpin.

The court **DISMISSES** the tortious interference with contract claim.[2]

The court **DENIES** Dynamic Movers, Inc.'s motion to compel answers to interrogatories as untimely.

Dynamic Movers, Inc.'s remaining contract claim will proceed to trial.

---

2. Although Dynamic has tortious interference claims involve many relationships, it pled them jointly as one claim; hence, granting summary judgment dismisses claim III of Dynamic's complaint.